UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------  X
                                                                :
ANNMARIE RAMNARINE                                              :
                                                                :    Case No.: 22-cv-6406 (NRM)(RER)
                                              Plaintiff,         :
                                                                :
                                                                :
                        – against –                             :
                                                                :
CITIBANK, N.A.                                                  :
                                                                :
                                              Defendant.         :
                                                                :
---------------------------------------------------------------  X

Served on Defendant's counsel on April 17, 2023 via email


**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO
COMPEL ARBITRATION**

CAMBA Legal Services
20 Snyder Avenue
Brooklyn, NY 11226
(718) 940-6311
*Counsel for Plaintiff Annmarie Ramnarine*

1

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. 3

PRELIMINARY STATEMENT ........................................................................................... 4

STATEMENT OF FACTS .................................................................................................... 5

    I.   Ms. Ramnarine's Account History ................................................................. 6

    II.   The Fraud ....................................................................................................... 8

    III.   Ms. Ramnarine's Fraud Disputes and Defendant's Responses ..................... 9

ARGUMENT ...................................................................................................................... 12

    I.   Citibank Bears the Burden of Establishing That Ms. Ramnarine Agreed to Arbitrate .. 13

    II.   Citibank Fails to Make a Prima Facie Showing that an Agreement to Arbitrate Exists . 14

        A.  Citibank has not identified the governing agreement nor has it proved its contents. ................................................................................................ 15

           1.  Citibank has not identified the contract that Ms. Ramnarine allegedly agreed to when opening her accounts. .................................................. 16

           2.  Citibank has supplied only partial excerpts of the contract it claims governs Ms. Ramnarine's accounts, leaving the Court without the essential terms ................. 17

        B.  Citibank has not offered evidence to show that Ms. Ramnarine agreed to be bound by the Arbitration Agreement. ...................................................... 20

        C.  Citibank's motion is not supported by admissible evidence. ................................................................................................ 23

    III.   Ms. Ramnarine's Affidavit Raises Issues of Fact As To Whether an Agreement to Arbitrate Exists. ...................................................................................................... 26

    IV.   The Case Law Citibank Cites in Support of Its Motion Has No Bearing on the Present Case. ...................................................................................................... 27

CONCLUSION .................................................................................................................. 29

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*166 Mamaroneck Ave. Corp. v. 151 E. Post Rd. Corp.,* 78 N.Y.2d 88, 91 (N.Y. 1991) .............. 18

*Allied Sheet Metal Works, Inc. v. Kerby Saunders, Inc.*, 619 N.Y.S.2d 260, 263 (App. Div. 1st Dep't. 1994) .................................................................................................................. 15

*Applied Energetics, Inc. v. NewOak Capital Markets, LLC*, 645 F.3d 522, 526 (2d Cir. 2011) .. 13

*B. Lewis Prods., Inc. v. Maya Angelou, Hallmark Cards, Inc.*, No. 01CIV.0530MBM, 2005 WL 1138474, at *6 (S.D.N.Y. May 12, 2005) ................................................................. 17

*Barrows v. Brinker Rest. Corp.*, 36 F.4th 45, 50 (2d Cir. 2022)....................................... 14, 26, 27

*Bazemore v. Jefferson Capital Systems, LLC*, 827 F.3d 1325, 1331 (11th Cir. 2016) ................ 24

*Benicorp Ins. Co. v. Nat'l Med. Health Card Sys., Inc.*, 447 F. Supp. 2d 329, 337 (S.D.N.Y. 2006) ............................................................................................................................. 16

*Biggs v. Midland Credit Mgmt., Inc.*, 2018 WL 1225539, at *3 (E.D.N.Y. Mar. 9, 2018). ... 24, 25

*Butto v. Collecto Inc.*, 802 F. Supp. 2d 443, 446 (E.D.N.Y. 2011) ............................................. 13

*Chambers v. TimeWarner, Inc.*, 282 F.3d 147, 155 (2d Cir. 2002) ............................................. 14

*De Mello E Silva v. Citibank*, N.A., No. 19-23547-CIV, 2020 WL 13358550 (S.D. Fla. Sept. 30, 2020) ............................................................................................................................. 29

*De Mello E Silva v. Citibank, N.A.,* No. 19-23547-CIV, 2020 WL 8115993, at *1 (S.D. Fla. Nov. 6, 2020) ...................................................................................................................... 28

*Dreyfuss v. eTelecare Glob. Sols.-US, Inc.*, No. 08 CIV 1115 (RJS), 2008 WL 4974864, at *4 (S.D.N.Y. Nov. 19, 2008) ........................................................................................ 18, 19

*Dreyfuss v. Etelecare Global Solutions-U.S. Inc.*, 349 F. App'x. 551, 555 (2d Cir. 2009)... passim

*Ginsberg Machine Co. v. J. & H. Label Processing Corp.*, 341 F.2d 825, 828 (2d Cir. 1965) ... 17

*Hamburg v. New York Univ. Sch. of Med.*, 62 N.Y.S.3d 26, 39 (App. Div. 1st Dep't 2017)....... 18

*Hines v. Overstock.com, Inc.*, 380 F. Appx. 22, 25 (2d Cir. 2010)............................................. 14

*Hirsch v. Citibank, N.A.*, 2014 WL 2745187 at *12 (S.D.N.Y. 2014) ............................. 21, 25, 28

*In re Am. Express Fin. Advisors Sec. Litig.*, 672 F.3d 113, 128 (2d Cir. 2011) ......................... 13

*InspiRx, Inc. v. Lupin Atlantis Holdings SA*, 554 F. Supp. 3d 542, 554 (S.D.N.Y. 2021) ........... 18

*Int'l Klafter Co. v. Cont'l Cas. Co.*, 869 F.2d 96, 99 (2d Cir. 1989) .......................................... 18

*Jimenez v. Monadnock Const., Inc.*, 970 N.Y.S.2d 577, 580 (App. Div. 2d Dep't 2013)............ 15

*Kasper Global Collection & Brokers, Inc. v. Global Cabinets & Furniture Mfrs., Inc.*, 952 F. Supp. 2d 542, 572–73 (S.D.N.Y. 2013)..................................................................... 24

*Kassim v. CVS Albany, LLC*, 2022 WL 4357456, at *6 (E.D.N.Y. Sept. 20, 2022) ................... 14

*Ma v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 597 F.3d 84, 92 (2d Cir. 2010)............. 21, 25

*Marcus v. Collins*, 2016 WL 8201629, at *7 (S.D.N.Y. Dec. 30, 2016)..................................... 24

*Mayfield v. Asta Funding, Inc.*, 95 F. Supp. 3d 685, 695 (S.D.N.Y. 2015)........................... 13, 20

*Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016)....................................... 13, 14, 23

*Prince of Peace Enters., Inc. v. Top Quality Food Mkt., LLC*, 760 F. Supp. 2d 384, 397 (S.D.N.Y. 2011) ........................................................................................................ 15, 16

*Republic of Ecuador v. Chevron Corp.*, 638 F.3d 384, 392 (2d Cir. 2011)................................. 14

*Riverside S. Plan. Corp. v. CRP/Extell Riverside, L.P.*, 13 N.Y.3d 398, 404 (2009)................. 18

*Ross v. Am. Exp. Co.*, 547 F.3d 137, 142–43 (2d Cir. 2008) ...................................................... 14

*Savarese v. J.P. Morgan Chase*, No. 16CV321JFBSIL, 2016 WL 7167968, at *3 (E.D.N.Y. Nov. 16, 2016), *report and recommendation adopted*, No. 16CV321JFBSIL, 2016 WL 7176601 (E.D.N.Y. Dec. 7, 2016) ............................................................................................ 21

*Sayeedi v. Walser*, 835 N.Y.S.2d 840, 848 (N.Y. Civ. Ct. 2007) .................................................. 18
*Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 118 (2d Cir. 2012)............................................ 14, 23
*Schurr v. Austin Galleries of Ill.*, 719 F.2d 571, 576 (2d Cir. 1983) ..................................... 16, 17
*SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 138 (2d Cir. 2009) ................................ 24
*Sponheim v. Citibank, N.A.*, 2019 WL 2498938 (C.D. Cal. June 10, 2019)................................ 28
*Sultan v. Coinbase, Inc.*, 354 F. Supp. 3d 156, 162 (E.D.N.Y. 2019) ......................................... 24
*Valsana, S.A. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 85 Civ. 0943(JFK), 1987 WL 6908, at *2 (S.D.N.Y. Feb, 10, 1987) ...................................................................................... 18
*Volt Info. Scis. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989) .......... 13
*Walters v. Citibank, N.A.*, 2021 WL 1907831 (N.D. Cal. May 12, 2021).................................. 28
*Zeevi v. Citibank, N.A.*, 2021 WL 621423 (D. Nevada Feb. 16, 2021) ....................................... 28

**Rules**
Fed R. Evid. 602 ........................................................................................................................... 24
Fed. R. Evid. 406 .......................................................................................................................... 21
Fed. R. Evid. 803(6)................................................................................................................ 24, 25

## PRELIMINARY STATEMENT

Plaintiff Annmarie Ramnarine's life savings were stolen when fraudsters accessed her Citibank accounts without her permission or authorization, transferred money from her Citibank checking account to her Citibank savings account, and then wired almost all of the money in Ms. Ramnarine's savings account to an unknown Wells Fargo account based in California. Citibank did not flag the suspicious activity on Ms. Ramnarine's bank accounts and allowed the unauthorized transfers to occur. Despite Ms. Ramnarine's numerous and prompt efforts to dispute the fraud, Citibank failed to conduct a reasonable investigation, failed to timely report the results of its investigation, and misrepresented to Ms. Ramnarine that she was responsible for the fraud. Ms. Ramnarine brought this action against Citibank, N.A. ("Citibank"), the Defendant, for damages arising out of Citibank's violations of the Electronic Fund Transfer Act, 15 U.S.C. § 1693 et seq. ("EFTA") and the rules and regulations thereunder; New York Uniform Commercial Code Article 4-A; New York General Business Law § 349; and state common law.

Citibank moves to compel arbitration of this case based on its contention that Ms. Ramnarine purportedly agreed to an arbitration provision contained in Citibank's Client Manual

Consumer Accounts ("Client Manual"). Specifically, Citibank claims that when Ms. Ramnarine opened her checking account in 2019, she agreed to be bound by the agreement referenced in and attached to its motion, which is a Client Manual that went into effect on June 18, 2020. (Citibank Mot. Ex. B.) Citibank attaches only a short excerpt of this Client Manual: what purports to be a table of contents along with pages 8, 9, and 58–62 of this document. (*Id.*)

A party moving to compel arbitration bears the burden of showing, through admissible evidence, that the parties agreed to submit their dispute to arbitration. Citibank fails to carry this burden. It asks this Court to force Ms. Ramnarine to give up her right to be heard in this forum based on inadequate, conclusory evidence: Citibank falsely claims that in 2019 Ms. Ramnarine agreed to be bound by a Client Manual that did not yet exist, provides only brief excerpts of this agreement, and attempts to support its claim that Ms. Ramnarine assented to the agreement with the vague, boilerplate testimony of a bank employee who does not provide any information regarding the opening of Ms. Ramnarine's accounts, her personal knowledge of Ms. Ramnarine's accounts, or Citibank's office procedures in general. Put simply, Citibank offers no probative, admissible evidence to show that the parties agreed to arbitrate, and so its motion must be denied.

## STATEMENT OF FACTS

Ms. Ramnarine is a 60-year-old Brooklyn resident who moved to the United States in 2001. (Ramnarine Decl. ¶ 2.) She has lived in the same apartment in Flatbush, Brooklyn, ever since and has made a living by working in retail stores in the neighborhood. (*Id.*) She diligently saved any extra income she had with the hope of one day buying a house with her husband. (*Id.*)

## I.    <u>Ms. Ramnarine's Account History</u>

Ms. Ramnarine has slowly and carefully saved her money since 2005. (Ramnarine Decl.

¶ 2.) She did not initially deposit her savings in a bank account because she was concerned that

her money would not be safe and had heard stories of people whose Personal Identification

Numbers ("PINs") were compromised and money stolen. (*Id.* ¶ 3.)

In July 2016, at the urging of her family, Ms. Ramnarine opened her first bank account in

the United States: a Citibank savings account ending in 9029. (Ramnarine Decl. ¶ 4.) She opened

the account at the Citibank branch at 885 Flatbush Avenue in Brooklyn. (*Id.*) At the branch, she

met with a male Citibank employee and the entire account opening process took approximately

20 minutes. (*Id.*) The Citibank employee who opened the account did not provide Ms.

Ramnarine with the Client Manual (*id.*)—in fact, he could not have done so, since the Client

Manual supplied by Citibank became effective four years after Ms. Ramnarine even opened her

account. (*See* Citibank Mot. Ex. B.) The Citibank employee who opened the account also did not

provide Ms. Ramnarine with any earlier-dated version of the Client Manual or any other long

document, and did not mention anything about an arbitration agreement. (Ramnarine Decl. ¶ 5.)

Ms. Ramnarine recalls signing at least one paper when she opened the account and using her

taxpayer identification number because she did not have a social security number at the time.

(*Id.*) She left the branch with only a few pages of documents. (*Id.* ¶ 6.)

In November 2019, Ms. Ramnarine opened a Citibank checking account ending in 1037.

(Ramnarine Decl. ¶ 8.) As part of opening this account, she was issued a debit card ending in

6914. (*Id.*) As she did with her savings account, Ms. Ramnarine opened her Citibank checking

account by going to the branch at 885 Flatbush Avenue. (*Id.*) This time, she met with a female

employee, but once again, the process took approximately 20 minutes. (*Id.*) The Citibank

employee did not provide her with the Client Manual, any earlier versions of the Client Manual, or any other long document, and did not mention anything about an arbitration agreement. (*Id.*) Ms. Ramnarine recalls signing at least one paper and left the branch with only a few pages of documents. (*Id.*)

Ms. Ramnarine kept all of the documents she received when she opened her Citibank accounts in a safe place in her apartment. (Ramnarine Decl. ¶ 9.) Copies of these documents are attached at Exhibit A. (*Id.*) Even after opening her accounts, Mr. Ramnarine did not receive any Client Manuals or long documents from Citibank and no one ever discussed an arbitration provision with her. (*Id.* ¶ 11.) She has reviewed the portions of the Client Manual Citibank attached to the present motion and does not recognize it. (*Id.* ¶ 10.) She did not receive this Client Manual or any other long document resembling a Client Manual. (*Id.*). The first time she heard anyone mention the term "arbitration" was when her attorney discussed the present motion with her. (*Id.* ¶ 11.)

Ms. Ramnarine's banking habits were extremely consistent. (Compl. ¶ 24.) Whenever she withdrew or deposited money, she went to a teller at the Citibank branch located at 885 Flatbush Avenue. (*Id.*) She never used ATMs and she never made any online transfers. (*Id.*) She has the Citibank app, but she has only ever used the app to check her account statements and her account balances. (*Id.*) Ms. Ramnarine has only ever made two wire transfers from her Citibank accounts. (*Id.* ¶ 26.) Both of these were international transfers sent to her son Davendra Ramnarine through his bank account at Republic Bank in Trinidad and Tobago. (*Id.*) She made the first transfer on July 16, 2020 in the amount of $6,000 and the second transfer on December 10, 2020 in the amount of $2,000. (*Id.*) She made both of these transfers in person with a teller at the Citibank branch at 885 Flatbush Avenue. (*Id.*)

During her time as a Citibank customer, Ms. Ramnarine never transferred funds from her checking to her savings account, she never sent money to anyone other than her son, she never used online banking services to deposit, withdraw, or transfer money, she never authorized anyone else to access her Citibank accounts, and she never shared her log-in information with her husband, sons, or anyone else. (*Id.* ¶ 27.)

## II. <u>The Fraud</u>

On November 10, 2021, Ms. Ramnarine had $2,081.34 in her checking account and $25,032.00 in her savings account. (Compl. ¶ 28.) A fraudster then made three unauthorized transfers from Ms. Ramnarine's Citibank accounts. (*Id.* ¶ 29.) First, the fraudster made an online transfer of $2,000 from Ms. Ramnarine's Citibank checking account ending in 1037 to her Citibank savings account ending in 9029. (Compl. ¶ 29; Ex. A; Ex. C p. 15.) The fraudster then made two unauthorized wire transfers, in the amounts of $21,599.99 and $4,799.99, from Ms. Ramnarine's savings account ending in 9029. (Compl. ¶ 30; Ex. C pp. 37–40.) Citibank charged her a $25.00 fee for each transfer. (*Id.*)

Ms. Ramnarine learned of the unauthorized transfers on the same day the fraud occurred, when she looked at her cell phone and saw that she suddenly had more than 400 unread emails. (Compl. ¶ 31.) When she opened her email, she saw at the top six emails that appeared to be from Citibank. (*Id.* ¶ 29; Ex. C pp. 16–33.) The first email stated that she had updated her list of payees to include "Mi'yahna R." (*Id.*) The second email alerted her that her account was now set up for "Wire Transfer Services." (*Id.*) Two more emails were fraud alerts, stating that the bank noticed suspicious activity on her account and asking if she recognized the two wire transfers, with the option to choose: "yes, I recognize all of the above" or "no, I do not recognize one or more of the above." (*Id.*) She received two additional emails informing her that "The hold on

[her] transfer was removed" and the wire transfer was sent. (*Id.*) Below the Citibank emails were more than 400 spam emails. (Compl. ¶ 31.) Ms. Ramnarine did not open the spam emails or click on any links in the spam emails. (*Id.*)

Ms. Ramnarine immediately opened her Citibank app and was shocked to see that there was only $582.02 left in her savings account and $81.34 in her checking account. (Compl. ¶ 32; Ex. C pp. 37–44.)

### III.  <u>Ms. Ramnarine's Fraud Disputes and Defendant's Responses</u>

Ms. Ramnarine promptly called the number on the back of her Citibank debit card to report the fraud. (Compl. ¶ 33.) A Citibank representative told Ms. Ramnarine that she needed to speak with the Wire Department and transferred Ms. Ramnarine's call to the Wire Department, but no one answered. (*Id.*) Ms. Ramnarine kept calling the Wire Department until around 8:30 p.m., but no one answered. (*Id.*) Later that night, Ms. Ramnarine returned to the Citibank emails she had received earlier in the day and clicked "no" to confirm that she did not recognize the transfers. (*Id.*)

On November 11, 2021, Ms. Ramnarine again called the number on the back of her Citibank debit card. (Compl. ¶ 34.) The Citibank employee told Ms. Ramnarine that the money had been removed from her account on November 10, 2021 via two wire transfers at 3:15 p.m. and 3:18 p.m. to a Wells Fargo Bank account ending in 4481 in San Francisco under the name Mi'yahna Robinson. (*Id.*) Ms. Ramnarine told the representative she did not make or authorize these transfers and does not know anyone by the name Mi'yahna Robinson. (*Id.*) The Citibank employee told Ms. Ramnarine to speak with the Wire Department and gave her another phone number to try. (*Id.*) Ms. Ramnarine tried the new Wire Department number, but once again, no one answered. (*Id.* ¶ 35.)

On November 11, 2021, at the instruction of a Citibank employee, Ms. Ramnarine filed an FBI complaint and reported the crime to the New York Police Department ("NYPD"). (Compl. ¶ 37.) The NYPD officer instructed her to get fraud affidavits and an account statement from Citibank, and then return to the precinct to complete the report. (*Id.*)

The next day, Ms. Ramnarine went to the Citibank branch at 885 Flatbush Ave. in Brooklyn. (Compl. ¶ 38.) A Citibank employee instructed Ms. Ramnarine to complete an Affidavit of Unauthorized Online Wire Transfers for each wire transfer and gave Ms. Ramnarine a copy of the Transaction Activity report for her savings account. (*Id.* ¶ 39; Ex. C pp. 12–15.) Ms. Ramnarine also closed the accounts and transferred what remained of her money to a new Citibank account. (Compl. ¶ 39.)

Ms. Ramnarine returned to the police precinct with the Affidavits of Unauthorized Online Wire Transfers and Transaction Activity report. (Compl. ¶ 40.) She completed the filing of the police report and received in return an incident information slip. (*Id.*) Ms. Ramnarine then went back to the Citibank branch at 885 Flatbush and a Citibank employee faxed the Affidavits of Unauthorized Online Wire Transfers, NYPD incident information slip, and FBI complaint to the Fraud Department. (*Id.*) The Citibank employee told Ms. Ramnarine the investigation could take up to 90 days. (*Id.*)

On or around November 13, 2022, a Citibank employee called Ms. Ramnarine and asked if she had taken $2,000 from her account. (*Id.* ¶ 41.) Ms. Ramnarine told the Citibank employee that she had not taken any money and that someone had stolen all of the money from her accounts. (*Id.*)

On February 10, 2022, Ms. Ramnarine went to the Citibank branch to check the status of her fraud claim. (*Id.* ¶ 43.) She spoke to the branch manager, Ms. Perkins, who made a phone

call and then informed Ms. Ramnarine that Citibank had denied her claim on February 9, 2022. (*Id.*) Ms. Perkins told Ms. Ramnarine that she would receive a letter about her claim denial in 5–7 days. (*Id.*) Ms. Perkins asked if Ms. Ramnarine wanted to appeal Citibank's decision, and Ms. Ramnarine said yes. (*Id.*) Ms. Perkins told her that the appeal process would take another 30 to 60 days. (*Id.*)

Ms. Ramnarine never received any letters or correspondence from Citibank regarding her initial claim denial. (*Id.* ¶ 44.)

In March 2022, Ms. Ramnarine met with Melissa Koven, an attorney at CAMBA Legal Services, a nonprofit legal service provider, for assistance regarding this matter. (*Id.* ¶ 45.) CAMBA reached out to Citibank for an update on Ms. Ramnarine's appeal. (*Id.* ¶ 46.)

On April 21, 2022, CAMBA received correspondence from Citibank stating that the bank had denied Ms. Ramnarine's appeal because "the client admitted to clicking on a link and providing information." (Compl. Ex. C pp. 35–36.) The letter stated that Citibank had denied the initial claim for the same reason. (*Id.*) But Ms. Ramnarine never made any such admission and is not aware of any instance in which she clicked on a link and shared personal information. (Compl. ¶ 55.)

On April 22, 2022, Ms. Ramnarine received a letter from Citibank dated April 18, 2022, stating that her fraud claim had been denied because: "You did not take adequate steps to safeguard your account. This failure compromised the security of your account information and directly contributed to allowing the transaction in question to take place." (Compl. Ex. C p. 34.)

On April 29, 2022, Ms. Koven sent another dispute letter to Citibank's Fraud Department on behalf of Ms. Ramnarine asking Citibank to perform a reasonable investigation of Ms.

Ramnarine's fraud claims, credit or reimburse her for the unauthorized transfers, and provide documents on which the denial was based. (Compl. Ex. C.)

On June 28, 2022, Citibank sent Ms. Koven an email refusing to honor Ms. Ramnarine's claim for reimbursement. (Compl. Ex. D.) Citibank stated it sent verification requests to Ms. Ramnarine and both wire transfers were verified. Citibank represented that it submitted wire recalls but the beneficiary bank did not return any funds. (*Id.*)

Ms. Ramnarine then brought this action against Citibank, N.A. ("Citibank") for violating the Electronic Fund Transfer Act, 15 U.S.C. § 1693 et seq. ("EFTA") and the rules and regulations thereunder; New York Uniform Commercial Code Article 4-A; New York General Business Law § 349; and state common law, based on Citibank's failure to conduct a reasonable investigation, failure to timely report the results of its investigation, and misrepresentation to Ms. Ramnarine that she was responsible for the fraud.

## ARGUMENT

The party moving to compel arbitration bears the burden of showing that a binding agreement to arbitrate was formed. Citibank fails to meet this burden and its motion should be denied. First, Citibank does not produce the contract that Ms. Ramnarine allegedly agreed to upon opening her account, instead producing only seven substantive pages out of a 63-page Client Manual that did not go into effect until four years after Ms. Ramnarine opened her first Citibank account. Second, the only other evidence presented by Citibank is the declaration of an employee who makes material misstatements, and who provides no information to demonstrate that she possesses personal knowledge or is a witness qualified to offer testimony about the opening of Ms. Ramnarine's accounts or to introduce Citibank's records into evidence. Finally, Citibank fails to prove that Ms. Ramnarine received a Client Manual or assented to the

arbitration provision allegedly contained in the Client Manual. Even if Citibank had met its burden, Ms. Ramnarine has raised issues of fact through her sworn statement that she did not in fact receive the Client Manual attached to Defendants' motion, or any other document resembling this Client Manual.

I.   **Citibank Bears the Burden of Establishing That Ms. Ramnarine Agreed to Arbitrate.**

Courts in the Second Circuit use a two-part test to determine whether a claim should be arbitrated, considering first whether the parties have agreed to a valid arbitration agreement, and if so whether the dispute at issue falls within the scope of the arbitration agreement. *In re Am. Express Fin. Advisors Sec. Litig.*, 672 F.3d 113, 128 (2d Cir. 2011).

The initial question of whether the parties agreed to arbitrate, "is simply a matter of contract." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016) (citation omitted). It hinges on "consent, not coercion." *Mayfield v. Asta Funding, Inc.*, 95 F. Supp. 3d 685, 695 (S.D.N.Y. 2015) (quoting *Volt Info. Scis. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989)). Although the Federal Arbitration Act favors arbitration, that presumption does not apply when determining–as the Court must here–whether an arbitration agreement was made. *Applied Energetics, Inc. v. NewOak Capital Markets, LLC*, 645 F.3d 522, 526 (2d Cir. 2011). Congress' intent was to make arbitration agreements "as enforceable as other contracts, *but not more so*." *Butto v. Collecto Inc.*, 802 F. Supp. 2d 443, 446 (E.D.N.Y. 2011) (quoting *Ross v. Am. Exp. Co.*, 547 F.3d 137, 142–43 (2d Cir. 2008) (citations omitted). An individual "cannot be required to submit to arbitration any dispute which [s]he has not agreed so to submit." *Id.* (quoting *Republic of Ecuador v. Chevron Corp.*, 638 F.3d 384, 392 (2d Cir. 2011)).

The threshold question of whether an arbitration agreement exists and is effective is a question for the court, not an arbitrator. *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 118 (2d Cir. 2012); *Kassim v. CVS Albany, LLC*, 2022 WL 4357456, at *6 (E.D.N.Y. Sept. 20, 2022). State contract law governs the question of whether the parties agreed to arbitrate. *Nicosia*, 834 F.3d at 229.

In deciding a motion to compel arbitration, the courts apply a standard similar to that applied to a motion for summary judgment. *Id.* The court must consider "all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with…affidavits," and must draw all reasonable inferences in favor of the non-moving party. *Id.* (quoting *Chambers v. TimeWarner, Inc.*, 282 F.3d 147, 155 (2d Cir. 2002)).

As in a motion for summary judgment, the party moving to compel arbitration bears the initial burden of showing that a binding agreement to arbitrate was formed. *Barrows v. Brinker Rest. Corp.*, 36 F.4th 45, 50 (2d Cir. 2022). Where the movant fails to meet this burden, a motion to compel arbitration must be denied. *See Hines v. Overstock.com, Inc.*, 380 F. Appx. 22, 25 (2d Cir. 2010). If the movant carries its burden, the nonmovant must counter with evidence to substantiate her denial that an agreement was made, which may include a sworn declaration. *Barrows*, 36 F.4th at 50. If there is an issue of fact as to whether the parties entered into an arbitration agreement, a trial must be held. *Nicosia*, 834 F.3d at 229.

## II.   <u>Citibank Fails to Make a Prima Facie Showing that an Agreement to Arbitrate Exists.</u>

Citibank's motion to compel arbitration should be denied because it has not shown that an agreement to arbitrate exists. It has failed to produce a complete, governing account

agreement—instead attaching only excerpts of an unsigned, generic agreement dated years after Ms. Ramnarine opened her accounts—and has offered no credible evidence to show that Ms. Ramnarine agreed to be bound by that agreement or any other. In addition to these defects, the documents are not admissible because Citibank's sponsoring witness fails to provide the basic testimony necessary for their introduction.

### A. Citibank has not identified the governing agreement nor has it proved its contents.

Ms. Ramnarine resides in New York and opened and used her Citibank accounts in New York. New York has "the most significant relationship to the transaction and the parties," and so New York law applies. *Jimenez v. Monadnock Const., Inc.*, 970 N.Y.S.2d 577, 580 (App. Div. 2d Dep't 2013). Citibank indicates that it agrees by citing to New York state substantive law to argue that Ms. Ramnarine agreed to arbitrate this dispute.

Under New York law, a party seeking to enforce a contract must prove the existence of the contract as well as the terms. *Dreyfuss v. Etelecare Global Solutions-U.S. Inc.*, 349 F. App'x. 551, 555 (2d Cir. 2009) (citing *Allied Sheet Metal Works, Inc. v. Kerby Saunders, Inc.,* 619 N.Y.S.2d 260, 263 (App. Div. 1st Dep't. 1994)). Existence of a contract requires "an offer, acceptance, consideration, mutual assent and intent to be bound." *Prince of Peace Enters., Inc. v. Top Quality Food Mkt., LLC*, 760 F. Supp. 2d 384, 397 (S.D.N.Y. 2011), *adhered to on denial of reconsideration*, No. 07 CIV. 00349 RJH FM, 2011 WL 650799 (S.D.N.Y. Mar. 14, 2011) (quoting *Benicorp Ins. Co. v. Nat'l Med. Health Card Sys., Inc.*, 447 F. Supp. 2d 329, 337 (S.D.N.Y. 2006)). Mutual assent requires, in turn, "a meeting of the minds of the parties, and, if there is no meeting of the minds on all essential terms, there is no contract." *Id.* (quoting

*Benicorp*, 447 F. Supp. 2d at 337); *see also Dreyfuss*, 349 F. App'x at 554 (citing *Schurr v. Austin Galleries of Ill.*, 719 F.2d 571, 576 (2d Cir. 1983)).

Citibank has failed to establish the contract's existence and terms because it has not plausibly identified the contract Ms. Ramnarine allegedly agreed to when she opened her account and it has not produced a complete copy of any contract that would enable the Court and Ms. Ramnarine to understand the essential terms that Citibank claims govern here.

1.   Citibank has not identified the contract that Ms. Ramnarine allegedly agreed to when opening her accounts.

The document that Citibank claims contains the parties' agreement—the Client Manual—took effect on June 18, 2020. (Perkins Decl. ¶ 4.) Citibank claims that Ms. Ramnarine agreed to the terms in this specific document "when she opened the Account in 2019." (D.'s Mem. in Supp. of Mot. to Compel 3; Perkins Decl. ¶ 4–5). But Ms. Ramnarine had two accounts with Citibank that are relevant to this case, the first of which she opened in 2016 and the second of which she opened in 2019. By Citibank's own admission, the Client Manual postdates the opening of both of Ms. Ramnarine's accounts, and Ms. Ramnarine cannot have agreed to be bound by this agreement when she opened her accounts. Citibank does not explain or acknowledge this contradiction or offer any explanation for how the 2020 Client Manual could have come to govern Ms. Ramnarine's accounts—such as, for example, if she agreed to one version when she opened her accounts but later agreed to a revised version.

As a result of Citibank's failure to provide the actual Client Manuals in effect in 2016 and 2019, the Court cannot know whether these agreements contained any arbitration provision at all, or how any arbitration provision in effect on those dates differed from the arbitration agreement attached to Citibank's motion. And although the 2020 Client Manual states that the terms of the Agreement may be changed or modified upon notice to the customer, Ms. Ramnarine is not

bound by this provision because the 2020 Client Manual was not in effect at the time she opened

her accounts and Citibank has not provided any evidence that the Client Manuals Ms. Ramnarine

should have received in 2016 and 2019 contained a similar provision. Citibank also does not

allege that it actually provided notice to Ms. Ramnarine of any changes or amendments to the

Client Manual. Finally, Citibank does not state whether the 2020 Client Manual was still in

effect at the time of the fraudulent transfers that gave rise to the claims in this case.

2. Citibank has supplied only partial excerpts of the contract it claims governs Ms. Ramnarine's accounts, leaving the Court without the essential terms.

Citibank has also failed to make its *prima facie* case because it has only supplied partial

excerpts of the 2020 Client Manual: the cover page, the table of contents, which indicates the

document is 63 pages long, and four pages that make up the purported Arbitration Agreement

(pages 8–9, 58–62).

For a contract to be valid and enforceable, there must be agreement between the parties

"on all essential terms." *Dreyfuss*, 349 F. App'x at 554 (quoting *Schurr*, 719 F.2d at 576). A term

is essential if "it seriously affects the rights and obligations of the parties and there is a

significant evidentiary dispute as to its content." *B. Lewis Prods., Inc. v. Maya Angelou,*

*Hallmark Cards, Inc.*, No. 01CIV.0530MBM, 2005 WL 1138474, at *6 (S.D.N.Y. May 12,

2005) (quoting *Ginsberg Machine Co. v. J. & H. Label Processing Corp.,* 341 F.2d 825, 828 (2d

Cir. 1965)).

"[A] court cannot enforce a contract unless it is able to determine what in fact the parties

have agreed to.... [I]f an agreement is not reasonably certain in its material terms, there can be no

legally enforceable contract." *Dreyfuss v. eTelecare Glob. Sols.-US, Inc.*, No. 08 CIV. 1115

(RJS), 2008 WL 4974864, at *4 (S.D.N.Y. Nov. 19, 2008) (quoting *166 Mamaroneck Ave. Corp.*

*v. 151 E. Post Rd. Corp.,* 78 N.Y.2d 88, 91 (N.Y. 1991)), *aff'd sub nom. Dreyfuss*, 349 F. App'x

551. In general, contract terms should not be considered in isolation, but must be considered "in the light of the obligation as a whole and the intention of the parties as manifested thereby." *Hamburg v. New York Univ. Sch. of Med.*, 62 N.Y.S.3d 26, 39 (App. Div. 1st Dep't 2017) (quoting *Riverside S. Plan. Corp. v. CRP/Extell Riverside, L.P.*, 13 N.Y.3d 398, 404 (2009)); *see also InspiRx, Inc. v. Lupin Atlantis Holdings SA*, 554 F. Supp. 3d 542, 554 (S.D.N.Y. 2021) ("a court must consider the provisions of the contract as a whole" (quoting *Int'l Klafter Co. v. Cont'l Cas. Co.*, 869 F.2d 96, 99 (2d Cir. 1989)).

Accordingly, "New York courts have refused to enforce incomplete contracts." *Dreyfuss*, 2008 WL 4974864, at *6 (citing *Valsana, S.A. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* No. 85 Civ. 0943(JFK), 1987 WL 6908, at *2 (S.D.N.Y. Feb, 10, 1987) ("The Court declines to patch together a document that evidently is missing."); *Sayeedi v. Walser*, 835 N.Y.S.2d 840, 848 (N.Y. Civ. Ct. 2007) ("Without the full agreement, all of the terms are not known to the Court. This Court will not selectively enforce incompletely provided contractual agreements.")).

In *Dreyfuss*, the Second Circuit held that the movant failed to make a *prima facie* case where it produced only the first page and signature page, along with three other documents containing arbitration agreements, but failed to produce a single standard document containing an arbitration clause. 349 Fed. App'x at 553–54. As the district court below had observed, there is "no support in the law for the proposition that two pages of a contract with an indefinite number of missing pages, by themselves, constitute an enforceable agreement." *Dreyfuss*, 2008 WL 4974864, at *6.

Citibank produces only seven substantive pages from a document that appears to be 63 pages long and contains numerous additional substantive terms that Citibank has not produced.

(Perkins Decl. Ex. B.) For example, the table of contents indicates that page 5 contains "Definitions," which could be relevant to the interpretation of the arbitration agreement. Pages 9 through 16 concern "Account Opening/Ownership/Maintenance," which could be relevant to the process by which Ms. Ramnarine opened her account and any documents or agreements that should have been offered to her. Page 10 contains a "Governing Law" provision, but Citibank again does not produce this page. (Perkins Decl. Ex B, p. 3.) Citibank has also omitted a "Severability" section, which would enable to the Court to understand whether or not the arbitration provision may be severed from the rest of the contract. (*Id.*) Finally, the first page of the excerpt produced by Citibank states: "Some of these responsibilities are the same for every customer, no matter where you live…Some are described in additional agreements." (Perkins Decl. Ex. B.) Citibank has not stated whether any additional agreements govern the account, and if so what they are.

By not providing the entire agreement, Citibank has failed to establish the essential terms of the entire contract and the contract cannot be enforced. *See Dreyfuss*, 349 F. App'x at 554. That Citibank has produced what it claims to be the full arbitration agreement does not change this analysis. Although *Dreyfuss* suggests that if the complete arbitration agreement had been presented to the court it would have been enforceable, the arbitration agreement in that case was a separate document that was purportedly separately executed. *See id.* at 552–53. Here, the arbitration agreement was embedded within a larger contract, with all parts allegedly assented to at once. Because Citibank has not produced the full agreement, all of the terms cannot be known and the contract should not be enforced.

**B. Citibank has not offered evidence to show that Ms. Ramnarine agreed to be bound by the Arbitration Agreement.**

Citibank has not shown that Ms. Ramnarine agreed to be bound by the 2020 Client Manual or any other agreement. As an initial matter, the Client Manual is an unsigned electronic document that does not bear Ms. Ramnarine's name or any other identifying information. While an unsigned agreement can be a mutually assented to contract, the party seeking to enforce it must still introduce evidence establishing that the specific agreement was agreed to by the specific parties. For example, in *Mayfield*, 95 F. Supp. 3d at 694, the defendants did not produce the documents they alleged formed the basis of the contracts between the parties. *Id.* Instead, the defendants provided only sample contracts and the declaration of an AT&T employee who alleged that documents called Welcome Guides, which contained an arbitration provision, applied to the plaintiffs but had since been destroyed. *Id.* This declaration, the court held, was unacceptably general: the affiant did not "purport to have personal knowledge of [the] alleged accounts or the terms and conditions that governed them." *Id.* The motion to compel arbitration accordingly failed because the defendants had not produced "any contracts between any Plaintiff and AT&T or any other admissible and probative evidence to establish that *these* Plaintiffs entered into binding agreements to arbitrate with AT&T." *Id.*

Citibank has also not produced a contract between itself and Ms. Ramnarine or any other admissible and probative evidence to establish that she entered into a binding agreement to arbitrate with Citibank. Citibank's motion to compel is supported by the declaration of Beverly Perkins. However, Ms. Perkins' declaration is devoid of any specific information demonstrating that a Client Manual was provided to Ms. Ramnarine. And, as discussed above, Ms. Perkins' declaration claims that a Client Manual that went into effect in 2020 was provided to Ms.

Ramnarine in 2016 and 2019, which is impossible. That alone undermines the credibility of Ms. Perkins' declaration.

Ms. Perkins summarily states that it was Citibank's "custom and practice" to provide customers with a copy of the Client Manual. (Perkins Decl. ¶ 6.) It is true that a party may show an agreement to arbitrate through evidence that it was their regular practice to offer and enter into agreements to arbitrate. *See Savarese v. J.P. Morgan Chase*, No. 16CV321JFBSIL, 2016 WL 7167968, at *3 (E.D.N.Y. Nov. 16, 2016), *report and recommendation adopted*, No. 16CV321JFBSIL, 2016 WL 7176601 (E.D.N.Y. Dec. 7, 2016); Fed. R. Evid. 406 ("Evidence of a person's habit or an organization's routine practice may be admitted to prove that on a particular occasion the person or organization acted in accordance with the habit or routine practice.") But without more, Ms. Perkins' conclusory statement is not evidence.

Along the same lines, a document may be presumed received where the movant demonstrates specific office procedures followed in the regular course of business and pursuant to which notice is provided. *Hirsch v. Citibank, N.A.*, 2014 WL 2745187 at *12 (S.D.N.Y. 2014), *aff'd* 603 F. App'x 59 (2d Cir. 2015) (citing *Ma v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 597 F.3d 84, 92 (2d Cir. 2010)). But again, the movant must offer specific evidence. In *Hirsch*, the court found that receipt could have been presumed based on extensive evidence offered by Citibank, including testimony on the specific policies and procedures for opening accounts by someone personally involved in creating those policies, as well as employee guidance for providing documents to customers opening accounts. *Hirsch*, 2014 WL 2745187, at *12 .

Ms. Perkins' declaration first fails to establish her personal knowledge of Citibank's policies and procedures concerning customer accounts and arbitration agreements. It does not identify the source of her personal knowledge of the alleged custom or practice; instead, she

alleges that she is a Vice President at Citibank, N.A. and states summarily that she makes her declaration based on her review of records relating to Ms. Ramnarine and her "personal knowledge of how the records are kept and maintained." (Perkins Decl. ¶¶ 1–2.) But Ms. Perkins does not provide a description of her job, she does not state her job duties, she does not state the dates of her employment, she does not say what training she has with Citibank's record keeping system, she does not say whether any of the records are stored electronically, and does not provide any other information about her position. Because Ms. Perkins does not provide any information about her job duties, the Court has no basis to conclude that she has personal knowledge of the facts she alleges in her declaration.

Ms. Perkins' declaration also does not describe any policies or procedures employed by Citibank concerning arbitration agreements or how customers are provided with notice of those agreements. Presumably, Citibank's method of providing customers with the Client Manual differs depending on whether a client opens an account in person or online. Yet Ms. Perkins does not claim to be familiar with the processes by which customers open accounts or the manner in which Client Manuals are provided to new customers. Ms. Perkins also does not provide any details demonstrating that she has personal knowledge of Ms. Ramnarine's account openings. For example, she does not state the dates on which Ms. Ramnarine opened her accounts, the fact that Ms. Ramnarine opened her accounts in person, or what information or documents Citibank allegedly provided to Ms. Ramnarine at the time she opened the accounts.

Taken together, Ms. Perkins' generic claims of "personal knowledge," conclusory statement that it is Citibank's "custom and practice" to provide customers with the Client Manual, and her false statement that Ms. Ramnarine agreed at her account opening to be bound by a Client Manual that did not yet exist, render Ms. Perkins' declaration untrustworthy and

insufficient to support Citibank's claim that Ms. Ramnarine assented to the unsigned 2020 Client Manual. Citibank offers no other probative evidence of mutual assent. Accordingly, its motion must be denied.

Finally, it is worth noting that Ms. Ramnarine's use of her Citibank accounts, and any benefit she may have received from her accounts, does not constitute her assent to Citibank's arbitration provision. Citibank does not state how Ms. Ramnarine assented to the arbitration provision and any reference to assent that may have been in the Client Manual has been omitted. Moreover, acceptance of a benefit constitutes assent only when the offeree accepts the benefit with actual or constructive knowledge of the terms of the offer. *Schnabel*, 697 F.3d at 120. Citibank has not established that Ms. Ramnarine had actual or constructive knowledge that using her accounts would bind her to the 2020 Client Manual because the manual postdates the opening of the accounts, and as discussed below, Ms. Ramnarine did not receive any document resembling a Client Manual, and no one mentioned an arbitration provision when she opened her accounts.

### C. Citibank's motion is not supported by admissible evidence.

A motion to compel arbitration must be supported by admissible evidence. *Nicosia*, 834 F.3d at 229. Citibank's attempt to make a *prima facie* case in favor of arbitration fails because none of its supporting evidence is admissible. Ms. Perkins' conclusory declaration fails to establish her personal knowledge, rendering both the 2020 Client Manual and her substantive testimony inadmissible hearsay.

Testimony must be made on the basis of personal knowledge. *See SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 138 (2d Cir. 2009); Fed R. Evid. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal

knowledge of the matter"). So, testimony that a party agreed to an arbitration agreement must be supported by personal knowledge of the account, the offering of the agreement, or the business' procedures for offering such agreements. *See, e.g., Marcus v. Collins*, 2016 WL 8201629, at *7 (S.D.N.Y. Dec. 30, 2016); *Bazemore v. Jefferson Capital Systems, LLC*, 827 F.3d 1325, 1331 (11th Cir. 2016) (finding defendant's declaration "woefully inadequate" in part because it was not based on personal knowledge or a review of records regarding the mailing of the cardholder agreement to plaintiff); *compare Sultan v. Coinbase, Inc.*, 354 F. Supp. 3d 156, 162 (E.D.N.Y. 2019) (finding sufficient foundation for declarant's knowledge where he attested to familiarity with both the process for the creation of user accounts and the manner in which account information was logged).

Similarly, business records are only admissible with the testimony of a custodian or qualified witness. Fed. R. Evid. 803(6). A witness is qualified if she can demonstrate that she is familiar with the business' record keeping system and knows how the records were created. *See Sultan*, 354 F. Supp. 3d at 162 (citing *Kasper Global Collection & Brokers, Inc. v. Global Cabinets & Furniture Mfrs., Inc.*, 952 F. Supp. 2d 542, 572–73 (S.D.N.Y. 2013)). For example, the court in *Biggs v. Midland Credit Management, Inc.* found a witness to be qualified where they described their job responsibilities and provided details regarding their familiarity with the manner in which the bank maintained records and account agreements and the manner in which it sent mailings to customers. 2018 WL 1225539, at *3 (E.D.N.Y. Mar. 9, 2018).

Ms. Perkins identifies herself as a "Vice President at Citibank, N.A." (Perkins Decl. ¶ 1) and states that her declaration is based on her personal knowledge and a review of business records. (*Id.* at ¶ 2.) She then offers a form recitation of the business records exception to the hearsay rule. (*Id.*) But as detailed above, Ms. Perkins does not provide any information regarding

her job duties, the dates of her employment, what training she has with Citibank's record keeping system or any other information about her position. Ms. Perkins provides limited testimony about the transaction at issue and even this limited testimony contains false statements, for example, that Ms. Ramnarine agreed to a 2020 account agreement when she opened her accounts in 2016 and 2019. (Perkins Decl. ¶ 4.)

As discussed above, her declaration lacks any specific information demonstrating that a Client Manual was provided to Ms. Ramnarine, how Citibank customers assent to agreements, or any information regarding Citibank's office procedures that could give rise to a presumption that notice was actually provided. *See Hirsch*, 2014 WL 2745187 at *12; *Ma*, 597 F.3d at 92. Because Ms. Perkins does not provide any information about her job duties, the Court has no basis to conclude that she has personal knowledge of the facts she alleges in her declaration. Similarly, without more information on how Ms. Perkins knows about Citibank's recordkeeping practices, the Court has no basis to credit Ms. Perkins' claim that "[i]t is Citibank's regular practice to keep such records in the ordinary course of regularly conducted business activity," or to admit the 2020 Client Manual under the business records exception to the hearsay rule. *See* Fed. R. Evid. 803(6). The declaration's insufficiency is underscored by the fact that if Ms. Perkins had such personal knowledge, it would have been very easy for her to provide information regarding her job duties, the amount and type of training she has with Citibank's recordkeeping system and how she knows the information she swears to. That she has not provided this basic testimony along with the misstatements in her declaration cast serious doubts on its accuracy. When taken together and viewed in the light most favorable to Ms. Ramnarine, Ms. Perkins has not demonstrated that she is a witness qualified to testify about Ms. Ramnarine's account or Citibank's business practices, or to enter Citibank's records into evidence.

### III.    Ms. Ramnarine's Affidavit Raises Issues of Fact As To Whether an Agreement to Arbitrate Exists.

Even if Citibank had made a sufficient *prima facie* showing, its motion to compel arbitration must still be denied because Ms. Ramnarine has offered specific facts showing that no agreement to arbitrate exists between the parties. A nonmoving party may defeat a motion to compel arbitration by submitting a declaration that unequivocally and specifically denies having entered into an agreement to arbitrate. *Barrows*, 36 F.4th at 51.

Ms. Ramnarine denies receiving Citibank's Client Manual and no one ever discussed an arbitration agreement with her. (Ramnarine Decl. ¶¶ 5, 8, 10.) As detailed in Ms. Ramnarine's affidavit, she opened her Citibank savings account in 2016 and her Citibank checking account in 2019. (*Id.* ¶¶ 4, 8.) She opened both accounts at the Citibank branch at 885 Flatbush Avenue in Brooklyn. (*Id.*) She recalls that it took approximately 20 minutes to open each account. (*Id.*) She did not receive a Client Manual at either account opening and the Citibank employees did not say anything to her about an arbitration provision. (*Id.* ¶¶ 5, 8.) She recalls signing at least one paper at each account opening and left the branch both times with only a few pages of documents. (*Id.* ¶¶ 5, 6, 8 & Ex. A.) She carefully kept the documents she received when she opened her accounts in a safe location in her apartment. (*Id.* ¶ 9.) Because Ms. Ramnarine did not receive a Client Manual and no one ever reviewed or discussed the terms of the Client Manual with her, she was not aware of the terms of the account agreement or any arbitration provision that allegedly governed her account. As a result, she did not assent to the account terms, there was no meeting of the minds on all essential terms, and no contract was formed between the parties.

Nothing in Citibank's motion contradicts Ms. Ramnarine's account or otherwise proves that it actually provided Ms. Ramnarine with the Client Manual. As discussed in detail above, Ms. Perkins' declaration is completely devoid of any details regarding Ms. Ramnarine's account

opening or the documents provided to Ms. Ramnarine. Ms. Perkins summarily states that Ms. Ramnarine was provided with a version of the Client Manual that did not exist at the time and Ms. Perkins does not detail any office procedure in place to confer notice on customers.

As in *Barrows*, Ms. Ramnarine's specific declaration categorically denying ever signing or receiving the Client Manual—and swearing that in fact she only received a few pages rather than a thick document numbering 63 pages—constitutes evidence that she did not agree to arbitration, raising an issue of fact and necessitating a trial. *Barrows*, 36 F.4th at 52–53.

**IV.** **The Case Law Citibank Cites in Support of Its Motion Has No Bearing on the Present Case.**

The case law Citibank cites in support of its motion is dissimilar to the facts of this case. Citibank argues that a parties' agreement to arbitrate must be enforced and supports this contention in part by citing several cases stating that a signed agreement constitutes presumptive evidence of assent to enter a binding agreement. (D.'s Mem. in Supp. of Mot. to Compel 6.) But these cases have no bearing on the present case, where Citibank has not proven the existence of an agreement to arbitrate, has not produced any signed agreement between the parties, and has incorrectly stated that Ms. Ramnarine agreed at her account openings in 2016 and 2019 to a Client Manual that did not go into effect until June 2020.

Citibank's next argument – that the courts routinely enforce the arbitration agreement contained in its Client Manual – is also unpersuasive. The majority of the cases cited by Citibank do not involve plaintiffs who contested receipt of the Client Manual or contended that an agreement to arbitrate did not exist. For example, in *Walters v. Citibank, N.A.*, 2021 WL 1907831 (N.D. Cal. May 12, 2021), the court noted that there was no dispute that plaintiff was a party to the client manual, but that plaintiff argued that the arbitration provision was unconscionable. The plaintiff in *Zeevi v. Citibank, N.A.*, 2021 WL 621423 (D. Nevada Feb. 16,

2021), similarly argued that the arbitration provision was unconscionable. And in *Sponheim v. Citibank, N.A.*, 2019 WL 2498938 (C.D. Cal. June 10, 2019), there was no dispute that the arbitration provision encompassed the claims at issue, but plaintiff contended that the provision was unenforceable because it deprived consumers of the right to seek injunctive relief.

The present case is factually distinct from the case law Citibank cites. The question here turns on whether an agreement to arbitrate exists between the parties. Here, Citibank fails to make its *prima facie* case and fails to prove the existence of such an agreement. And Ms. Ramnarine has provided an affidavit swearing that she did not receive a Client Manual, no one discussed an arbitration provision with her, and thus no agreement to arbitrate exists. Contrary to Citibank's contention that this case is similar to the case law cited in its motion, the present case is instead comparable to cases like *Hirsch*, 2014 WL 2745187 at *12, where the question is whether there was an arbitration agreement between the parties.

The only case cited by Citibank involving a claim that there was no agreement to arbitrate is *De Mello E Silva v. Citibank, N.A.,* No. 19-23547-CIV, 2020 WL 8115993, at *1 (S.D. Fla. Nov. 6, 2020) (referred to as *Fellype v. Citibank* by Defendant, after the plaintiff's first name), but that case, too, is distinguishable. The district court initially denied Citibank's motion to compel arbitration because the plaintiff had argued that he did not agree to arbitrate and his signature was forged. *De Mello E Silva v. Citibank*, N.A., No. 19-23547-CIV, 2020 WL 13358550 (S.D. Fla. Sept. 30, 2020). The district court later granted the motion to compel arbitration on reconsideration, after Citibank submitted a declaration from the plaintiff's financial advisor swearing that he had been authorized to open the account and sign account-opening forms on his behalf. *De Mello e Silva*, 2020 WL 8115993, at *1–2. The two *De Mello e*

*Silva* cases therefore support Ms. Ramnarine's argument: they demonstrate that a court may only compel arbitration in the face of specific evidence that the parties agreed to arbitrate.

For the reasons stated above, no agreement to arbitrate exists between the parties and Defendant's motion should be denied.

## **CONCLUSION**

Plaintiff respectfully requests that the Defendant's motion to compel arbitration be denied.

Dated: Brooklyn, New York
     April 17, 2023

        Respectfully submitted,


        By: *Melissa Koven*

        CAMBA LEGAL SERVICES, INC.
        Melissa Koven, Of Counsel
        Divya Subrahmanyam, Of Counsel
        Matthew Schedler, Of Counsel
        Elizabeth Miller, General Counsel
        20 Snyder Ave.
        Brooklyn, NY 11226
        Phone: (718) 940-6311
        MelissaK@camba.org