UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANNMARIE RAMNARINE,<br><br>         Plaintiff,<br><br>   - against -<br><br>CITIBANK, N.A.,<br><br>         Defendant. | Case No: 1:22-cv-06406 (NRM)(RER)<br><br>**ORAL ARGUMENT REQUESTED** |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT'S
MOTION TO COMPEL ARBITRATION AND STAY THIS ACTION**

**ZEICHNER ELLMAN & KRAUSE LLP**
1211 Avenue of the Americas
New York, New York 10036
Telephone: (212) 223-0400

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................... ii

PRELIMINARY STATEMENT ............................................................................. 1

THE FACTS CONCERNING THE DEPOSIT AGREEMENT ................................. 3

ARGUMENT ........................................................................................................... 6

    A.    Plaintiff and Citibank are Bound by a Valid Arbitration Agreement .......... 6

    B.    Citibank's Motion to Compel Arbitration is Supported by
        Admissible Evidence ............................................................................. 11

    C.    Plaintiff is Equitably Estopped from Contesting her Agreement to
        Arbitrate ................................................................................................ 14

CONCLUSION ..................................................................................................... 15

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

Acevado v. Citibank, N.A.,
   2012 U.S. Dist. LEXIS 40242 (S.D.N.Y. Mar. 23, 2012) ..................................................... 7

Benzemann v. Citibank, N.A.,
   2014 U.S. Dist. LEXIS 88030 (S.D.N.Y. June 27, 2014) ............................................... 7, 10

Brecher v. Midland Credit Mgmt.,
   2019 U.S. Dist. LEXIS 40590 (E.D.N.Y. Mar. 13, 2019) ......................................... 9, 11, 12

Castorino v. Citibank N.A.,
   2008 U.S. Dist. LEXIS 98559 (S.D.N.Y. Dec. 5, 2008) ........................................................ 7

Charles S. Fields, Inc. v. American Hydrotherm Corp.,
   5 A.D.2d 647 (1st Dep't 1958) ............................................................................................. 9

Hirsch v. Citibank, N.A.,
   2014 U.S. Dist. LEXIS 83534 (S.D.N.Y. June 10, 2014) ............................................ 10, 15

MAG Portfolio Consult, GmbH v. Merlin Biomed Grp., LLC,
   268 F.3d 58 (2d Cir. 2001) ............................................................................................. 2, 14

Meyer v. Uber Techs., Inc.,
   868 F.3d 66 (2d Cir. 2017) ............................................................................................... 2, 8

Peni v. Daily Harvest, Inc.,
   2022 U.S. Dist. LEXIS 205311 (S.D.N.Y. Nov. 10, 2022) ................................................... 8

Purcell v. Navient Sols., LLC,
   2019 U.S. Dist. LEXIS 6469 (S.D.N.Y. Jan. 14, 2019) ................................................ 11, 12

Reeves v. Safeguard Props. Mgmt., LLC,
   2021 U.S. Dist. LEXIS 110023 (S.D.N.Y. June 10, 2021) ................................................... 9

Samuel L. Hagan II, P.C. v. J.P. Morgan Chase Bank, N.A.,
   2011 N.Y. Misc. LEXIS 4907 (N.Y. Sup. Ct. Oct. 19, 2011) ............................................... 8

Schnabel v. Trilegiant Corp.,
   697 F.3d 110 (2d Cir. 2012) ............................................................................................... 14

Vergel v. Revel Tr.,
   2021 N.Y. Misc. LEXIS 2570 (Sup. Ct. New York Cty. May 11, 2021) ..........................8, 9

Walters v. Citibank, N.A.,
   2021 U.S. Dist. LEXIS 91011 (N.D. Cal. May 12, 2021) .................................................... 7

Zeevi v. Citibank, N.A.,
    2021 U.S. Dist. LEXIS 29010 (D. Nev. Feb. 16, 2021) ....................................................... 7

**Rules**

Federal Rule of Evidence 803 ................................................................................... 11, 12, 13

Defendant Citibank, N.A. submits this memorandum of law in reply to plaintiff's opposition and in further support of its motion for an order: (i) compelling arbitration of all disputes between plaintiff and Citibank; (ii) staying this action pending completion of the arbitration; and (iii) granting such other and further relief as the Court deems just and proper.

## PRELIMINARY STATEMENT[1]

Citibank's motion should be granted because plaintiff presents no valid legal or factual basis to ignore the broad arbitration provision in the Deposit Agreement that requires arbitration of plaintiff's claim. Indeed, plaintiff does not and cannot dispute that her claim is subject to arbitration. Instead, plaintiff complains that (i) the Deposit Agreement is not a contract because she did not receive a copy and, thus, did not agree to its terms; and (ii) Citibank did not provide admissible evidence of all the Deposit Agreement's terms. (See Opp. Br. at 20-26-27). Each argument fails as a matter of law.

*First*, the Deposit Agreement is a contract between plaintiff and Citibank, and it clearly states that, by maintaining an account, plaintiff agrees to be bound by, *inter alia*, its provisions. In addition, plaintiff executed a signature card approximately one year before commencing this action (and before the claim she seeks to pursue accrued) which states that plaintiff confirms receipt of the Deposit Agreement and acknowledges that, pursuant to the Agreement, all claims between plaintiff and Citibank are subject to binding arbitration. Moreover, plaintiff's claim that she never received a copy of the Deposit Agreement is belied by (a) the "Customer Care Checklist" attached to plaintiff's declaration, representing that plaintiff received a copy of the Deposit Agreement, (b) the signature card attached to Citibank's reply as

---

[1] Unless otherwise defined herein, all capitalized terms shall have the meaning ascribed in Citibank's memorandum of law dated January 26, 2023.

**Exhibit C** (the "Signature Card") by which she acknowledges receipt of the 2020 Deposit Agreement (defined below) and (c) documents attached to plaintiff's declaration and the complaint that repeatedly reference the Deposit Agreement by name. Certain references included instructions for downloading customer agreements, including the Deposit Agreement, which also constitutes delivery of the Agreement. See Meyer v. Uber Techs., Inc., 868 F.3d 66 (2d Cir. 2017).

*Second*, Citibank's motion is supported by documentary evidence. The arbitration clause on which Citibank relies in seeking to compel plaintiff to arbitrate is included in the Client Manual dated June 10, 2020 attached as Exhibit B to the declaration of Beverly Perkins submitted in support of Citibank's motion, and complete copies the Client Manuals Effective July 23, 2015, June 18, 2019, and June 10, 2020 are attached as exhibits to the declaration of Beverly Perkins submitted together with this reply. Plaintiff's claim that the Deposit Agreement is not authenticated as a business record is belied the declarations of Beverley Perkins, in which she clearly states that she is familiar with the relevant Deposit Agreements (defined below) and Citibank's practice to provide copies of Deposit Agreements when accounts are opened. Critically, she is the Manager at the Citibank Financial Center where plaintiff's accounts are maintained. Moreover, as plaintiff's complaint acknowledges, plaintiff interacted with Ms. Perkins in connection with the transactions that are the subject of this action.

*Third*, under Second Circuit authority plaintiff is equitably estopped from disclaiming her agreement to arbitrate because she "knowingly accepted the benefits of an agreement with an arbitration clause, even without signing the agreement." MAG Portfolio Consult, GmbH v. Merlin Biomed Grp., LLC, 268 F.3d 58, 61 (2d Cir. 2001). During the nearly seven years that she has maintained deposit accounts, plaintiff accepted the benefits of being

Citibank customer including, without limitation, interest payments and account management services. Thus, plaintiff cannot now disavow the bargain that she struck when she chose to open and maintain her Citibank deposit accounts.

For each of these reasons, Citibank's motion to compel arbitration should be granted, compelling plaintiff to arbitrate her claim against Citibank and this case should be stayed pending the resolution of this arbitration proceeding.

### THE FACTS CONCERNING THE DEPOSIT AGREEMENT[2]

The record before the Court shows the Deposit Agreement is a valid contract between plaintiff and Citibank and that plaintiff received a copy of the Deposit Agreement.[3]

The Deposit Agreement governs consumer deposit accounts maintained in most U. S. states, including New York. It is Citibank's custom and practice to provide a copy of a Deposit Agreement to its customers when they open a Citibank account. (See 1/23 Perkins Decl. ¶ 6; 5/23 Perkins Decl. ¶ 6). The Deposit Agreement is also readily available on Citibank's website. See ,e.g., Account Statements (Comp., Exhibit A at 9, 29, 33) [Docket No. 1-3] (referring plaintiff to www.citi/accountagreementsandnotices where individuals can download the Deposit Agreement).

Here, it is indisputable plaintiff received several copies of the Deposit Agreement:

---

[2] "Deposit Agreement" collectively refers to the 2015 Deposit Agreement, 2019 Deposit Agreement and 2020 Deposit Agreement that are each separately defined below.

[3] In its moving papers, Citibank presented the entire arbitration agreement from the Deposit Agreement in force on November 10, 2021 – when the transactions at issue occurred. See 2020 Deposit Agreement at 59-62 (1/23 Perkins Decl., Ex. B). To counter plaintiff's unfounded allegations concerning the Deposit Agreement, complete copies of the 2015 Deposit Agreement, 2019 Deposit Agreement and 2020 Deposit Agreement are being provided with Citibank's reply. (See 5/23 Perkins Decl., Exs. D, E, F).

3

- Client Manual – Consumer Accounts Effective July 23, 2015 ("2015 Deposit Agreement") when plaintiff opened a savings account in July 2016. (See 1/23 Perkins Decl. ¶ 6; 5/23 Perkins Decl. ¶¶ 6, 9). The "Customer Care Checklist" attached to Plaintiff's Declaration further proves plaintiff received the 2015 Deposit Agreement as the Checklist clearly states the Agreement was "explained and given to Client." See Customer Care Checklist (Plaintiff's Decl., Exhibit A at 3; see also Plaintiff Decl. ¶ 9);

- Client Manual – Consumer Accounts Effective June 18, 2019 ("2019 Deposit Agreement") when she opened a checking account in November 2019. (See Plaintiff Decl. ¶ 9; 1/23 Perkins Decl. ¶ 6; 5/23 Perkins Decl. ¶ 6, 10); and

- Client Manual – Consumer Accounts Effective June 10, 2020 ("2020 Deposit Agreement) when she opened another savings account on November 21, 2021. Plaintiff's receipt of the 2020 Deposit Agreement is memorialized by her Signature Card:

> I (1) <u>confirm I have received and agree to be bound by all</u> Citibank, N.A. terms and conditions applicable to my account(s), including the Client Manual Consumer Accounts, its Marketplace Addendum and/or any applicable loan note(s) or agreement(s), and (2) <u>understand and acknowledge</u> that, if applicable, such note(s)/agreement(s) provide that <u>any dispute between us will be resolved by binding arbitration</u>.

Signature Card (5/23 Perkins Decl., Ex. C) (emphases added).[4]

It is similarly undeniable that plaintiff received inquiry notice of the Deposit Agreement on an assortment of occasions. *First*, exhibits attached to Plaintiff's Declaration

---

[4] Plaintiff likely also executed signatures cards when she opened checking and savings accounts in July 2016 and November 2019. See Plaintiff Decl. ¶¶ 5,8 (noting she signed at least one document for each account opening).

4

contain multiple references to the Deposit Agreement. See Access Account Package ("This fact sheet is a summary of certain fees and features of your account. For more complete information about your account, please see your Marketplace Addendum and Client-Manual – Consumer Accounts."); Citi Products Opened/Applied for Today – Effective Date* November 22, 2019 ("Please refer to the Client Manual – Consumer Accounts and Marketplace Addendum for additional important information about your CD and your deposit relationship with Citibank.") (Plaintiff Decl, Ex. A at 5, 7). Moreover, the account statements attached to plaintiff's complaint repeatedly reference the Deposit Agreement by name. See Account Statements (Comp., Ex. A at 1, 5, 9, 13, 21, 25, 27, 29, 31, 33, 35 [Docket No. 1-3]. *Second*, plaintiff was on inquiry notice of the Deposit Agreement and its terms because several of plaintiff's account statements informed plaintiff that she could download the customer agreements for her account from Citibank's website. See ,e.g., Account Statements (Comp., Ex. A at 99, 29, 33).

Each iteration of the Deposit Agreement clearly states that, by maintaining an account, plaintiff agreed to be bound by the Deposit Agreement's terms:

> When you open a Citibank consumer deposit account, you are agreeing that your account will be governed by this Client Manual (sometimes referred to as "Manual") and any and all accompanying Marketplace Addenda (sometimes referred to as "Addendum"). Together, the Manual and Addendum are referred to as "Agreement," which contain important terms and conditions, details, rules and procedures applicable to each of your accounts.

2015 Deposit Agreement at 6 (emphasis added); 2019 Deposit Agreement at 4 (same as 2015 Agreement); 2020 Deposit Agreement at 4 (same as 2015 and 2019 Agreements) (5/23 Perkins Decl., **Exhibits D**, **E**, **F**).

5

Each iteration of the Deposit Agreement also states that it may be changed from time-to-time without prior notice:

> **Amendments/Changes to This Agreement**
>
> We may change (add to, delete or alter) the terms of our Agreement with you by mailing, e-mailing or delivering a notice, a statement message or an amended Agreement to any of you at the last address (location or e-mail) on file for you, your account, or the service in question. Unless otherwise required by law, we may amend the Agreement without prior notice (e.g. by posting the information in our offices, on our/your web site, or otherwise making it available to you). You should retain all notifications of change with copies of your account documentation. You can always request a copy of our current Agreement at any branch or by calling CitiPhone Banking.

2015 Deposit Agreement at 10; see also 2019 Deposit Agreement at 9; 2020 Deposit Agreement at 9 (same as 2019 Deposit Agreement at 9) (5/23 Perkins Decl., Exs. D, ,E, F).

Most importantly, each iteration of the Deposit Agreement contains a broad, unambiguous arbitration provision that requires plaintiff to arbitrate:

> Any claim or dispute relating to or arising out of <u>your deposit</u>, Ready Credit, Secured Ready Credit, Custom Credit Line, Checking Plus or Checking Plus (variable rate) <u>account, this Agreement, or our relationship will be subject to arbitration</u>…

2015 Deposit Agreement at 52 (emphases added); see also 2019 Deposit Agreement at 58; 2020 Deposit Agreement at 59 (same as 2018 Agreement).

## ARGUMENT

### A.  **Plaintiff and Citibank are Bound by a Valid Arbitration Agreement**

Plaintiff spends much of her opposition complaining the Deposit Agreement is not a valid contract because plaintiff did not receive a copy of the Deposit Agreement, did not

6

know if its existence and did not agree to its terms. (See Opp. Br. at 20, 26-27). These arguments are meritless.

It is beyond question that Citibank has established terms of its contract with plaintiff. To prove a contract's terms a party may either describe the contract's terms or attach a copy of the agreement. See Acevado v. Citibank, N.A., 2012 U.S. Dist. LEXIS 40242, at *30 (S.D.N.Y. Mar. 23, 2012); Castorino v. Citibank N.A., 2008 U.S. Dist. LEXIS 98559, at *7 (S.D.N.Y. Dec. 5, 2008). Here, the relevant arbitration clause in the 2020 Deposit Agreement was attached to Citibank's moving papers, and complete copies the 2015 Deposit Agreement, 2019 Deposit Agreement and 2020 Deposit Agreement are attached to Citibank's reply.

It is also beyond question that the Deposit Agreement constitutes a contract between Citibank and its customers, and, as a result, Citibank may enforce the arbitration clause in the Agreement. See Benzemann v. Citibank, N.A., 2014 U.S. Dist. LEXIS 88030, at* 10 (S.D.N.Y. June 27, 2014) (granting Citibank's motion to compel arbitration), aff'd, 806 F.3d 98 (2d Cir. 2015); Walters v. Citibank, N.A., 2021 U.S. Dist. LEXIS 91011, at *4 (N.D. Cal. May 12, 2021) (same); Zeevi v. Citibank, N.A., 2021 U.S. Dist. LEXIS 29010, at *8 (D. Nev. Feb. 16, 2021) (same). Thus, this Court should enforce the Deposit Agreement and grant Citibank's motion to compel arbitration.

Plaintiff claims she should not be bound by the Deposit Agreement because she never received a copy of the Deposit Agreement and thus there was no mutual ascent to be bound by the Agreement's terms. (See Opp. Br. at 20, 26-27). This argument fails for three independent reasons. *First*, plaintiff's claim she did not receive the Deposit Agreement is belied by the signature card plaintiff signed acknowledging receipt of the Deposit Agreement over one

year before this action was commenced.  See Signature Card (5/23 Perkins Decl., Ex. C). "Since plaintiff specifically acknowledged receiving a copy of the [Deposit Agreement] in the signature card, which was executed by [her], plaintiff is estopped from now claiming non-receipt of the Account Agreement or ignorance of its contents." Samuel L. Hagan II, P.C. v. J.P. Morgan Chase Bank, N.A., 2011 N.Y. Misc. LEXIS 4907, at *18 (N.Y. Sup. Ct. Oct. 19, 2011). *Second*, plaintiff's claim is belied by both the "Customer Care Checklist" that acknowledges plaintiff was given a copy of the Deposit Agreement and Citibank's custom and practice to provide a copy of a Deposit Agreement to customers when they open a Citibank account. See Customer Care Checklist (Plaintiff Decl., Exhibit A at 3); (see also 1/23 Perkins Decl. ¶ 6; 5/23 Perkins Decl. ¶ 6).  Plaintiff's self-serving statement that she did not receive the Deposit Agreement cannot withstand the clear evidence that she did.

*Third*, assuming *arguendo* plaintiff did not receive a copy of the at least one Deposit Agreement (she did), plaintiff would still be bound by its terms as a matter of law by reason of her inquiry notice  See Peni v. Daily Harvest, Inc., 2022 U.S. Dist. LEXIS 205311, at *8 (S.D.N.Y. Nov. 10, 2022) ("Where there is no evidence that the offeree had actual notice of the terms of the agreement, the offeree will still be bound by the agreement if a reasonably prudent user would be on inquiry notice of the terms.") (quoting Meyer v. Uber Techs., Inc., 868 F.3d 66, 74-75 (2d Cir. 2017)); see also Vergel v. Revel Transit, 2021 N.Y. Misc. LEXIS 2570, at *4 (Sup. Ct. New York Cty. May 11, 2021) ("Providing a hyperlink at the time of registration, and the users assent to register, is sufficient notice to the user that their registration is subject to contractual terms.").

Here, the monthly account statements sent to plaintiff and other documents repeatedly refer to the Deposit Agreement and give instructions on how to access Citibank

8

customer agreements and download it. See Account Statements (Comp., Ex. A at 9, 13, 21, 25, 27, 29, 31, 33, 35) [Docket No. 1-3]. These references also told plaintiff to refer to the Deposit Agreement for the terms that governed her account relationship with Citibank. See Access Account Package; Citi Products Opened/Applied for Today – Effective Date* November 22, 2019 (Plaintiff Decl, Ex. A at 5, 7). As plaintiff was on inquiry notice of the Deposit Agreement, she cannot now prevent Citibank from enforcing it because of her deliberate ignorance of its terms. See Reeves v. Safeguard Props. Mgmt., LLC, 2021 U.S. Dist. LEXIS 110023, at *16 (S.D.N.Y. June 10, 2021) (absent unconscionability, plaintiff's feigned ignorance of the existence of the arbitration agreement does not prevent enforcement of the agreement); Vergel v. Revel Tr., 2021 N.Y. Misc. LEXIS 2570, at *3 (Sup. Ct. New York Cty. May 11, 2021) ("An alleged lack of knowledge of the arbitration clause will not excuse it, for the law does not relieve a person merely because [one] has failed to read a document which [one] has executed.") (quoting Charles S. Fields, Inc. v. American Hydrotherm Corp., 5 A.D.2d 647, 649 (1st Dep't 1958)).

*Third*, plaintiff's continued use of her savings and checking accounts for more than seven years before commencing this action demonstrates as a matter of law that she agreed to the terms of the Deposit Agreement. See Brecher v. Midland Credit Mgmt., 2019 U.S. Dist. LEXIS 40590, at *14 (E.D.N.Y. Mar. 13, 2019) (granting motion to compel arbitration finding inter alia "[r]egular use of an account is sufficient to establish consent to the terms of the agreement governing it."). Indeed, the Deposit Agreement expressly states that plaintiff agrees to be bound by the Deposit Agreements by opening and maintaining her deposit accounts. See 2015 Deposit Agreement at 6; 2019 Deposit Agreement at 4; 2020 Deposit Agreement at 4. (5/23

9

Perkins Decl., Exs. D, E, F). For these reasons, plaintiff's attempt to disavow her ascent to the Deposit Agreement fails.

Equally meritless, plaintiff complains she cannot be bound by the Deposit Agreement because it is not clear what iteration of the Deposit Agreement would govern the November 10, 2021 transactions at issue in plaintiff's complaint. (See Opp. Br. at 16-17). As set forth above, the Deposit Agreement may be changed from time-to-time without prior notice to plaintiff. See 2015 Deposit Agreement at 10; 2019 Deposit Agreement at 9; 2020 Deposit Agreement at 9 (5/23 Perkins Decl., Exs. D, E, F). As the 2020 Deposit Agreement was the effective Deposit Agreement when the transactions at issue occurred, that iteration of the Deposit Agreement should govern plaintiff's claim.[5] However, the question of which iteration of the Deposit Agreement would govern plaintiff's dispute is irrelevant because, as set forth above, each iteration of the Deposit Agreement contains a substantially similar, broad arbitration clause that requires arbitration of plaintiff's claim. See 2015 Deposit Agreement at 52; 2019 Deposit Agreement at 58; 2020 Deposit Agreement at 59 (5/23 Perkins Decl., Exs. D, E, F); see also Benzemann, 2014 U.S. Dist. LEXIS 88030, at* 5 (noting that even though different iterations of the Deposit Agreement governed different portions of plaintiff's claim, "the language of the arbitration provisions contained in each of the relevant manuals are substantially similar").

Finally, plaintiff's reliance on Hirsch v. Citibank, N.A., 2014 U.S. Dist. LEXIS 8353 (S.D.N.Y. June 10, 2014) is misplaced. In Hirsch, the Court found that Citibank did not establish that the plaintiff was provided a copy of the Deposit Agreement because, among other

---

[5] Notably, plaintiff acknowledged receipt of the 2020 Deposit Agreement when plaintiff signed the Signature Card on November 12, 2021. Based on the date of the alleged loss that is the subject of this action, that is the iteration of the Deposit Agreement that was effective. See Signature Card (5/23 Perkins Decl., Ex. F; see also 5/23 Perkins Decl. ¶ 8).

things, the signature card plaintiff executed did not state that plaintiff acknowledged receipt of the Agreement. Id. at * 31-32. Here, the by the Signature Card plaintiff expressly acknowledges that she received the Deposit Agreement, agreed to its terms and acknowledged that disputes between plaintiff and Citibank were subject to binding arbitration.

For each of these reasons, plaintiff and Citibank have a valid arbitration agreement and Citibank's motion to compel arbitration should be granted.

B.     **Citibank's Motion to Compel Arbitration is Supported by Admissible Evidence**

Plaintiff makes the disingenuous claim that declarant Beverley Perkins does not have the requisite knowledge of Citibank's procedures or records to authenticate the Deposit Agreement. (See Opp. Br. at 21, 23-25) Here too, plaintiff's argument fails.

Under Federal Rule of Evidence 803(6), a business record is admissible evidence and an exception to the hearsay rule where the record is one that is made and kept in the ordinary course of a business's activity, and a custodian or other qualified witness attests that a given record meets these qualifications. Under settled law, movant's declaration and attached records are admissible evidence where she "attests that she is familiar with [movant's] records and policies and that the Declaration was made based on her personal knowledge after reviewing [movant's] records, which [movant] maintains in the ordinary course of business." Purcell v. Navient Sols., LLC, 2019 U.S. Dist. LEXIS 6469, at *16 (S.D.N.Y. Jan. 14, 2019); Brecher, 2019 U.S. Dist. LEXIS 40590, at *7 (business records attached to declaration are admissible where declarant states he is "familiar with the recordkeeping practices and policies of [Midland]" and declaration is based on his "own personal knowledge or upon [his] review of the records of [Midland] maintained in the ordinary course of business, of which [he is] custodian."). The

declarant "need not have personal knowledge of the actual creation of the document to lay a proper foundation." Purcell, 2019 U.S. Dist. LEXIS 6469, at *16.

Similarly, a declarant's statements are admissible evidence if they establish that their statements are based upon personal knowledge or their review of their employer's business records. See Brecher, 2019 U.S. Dist. LEXIS 40590, at *8.

Here, Citibank properly authenticates the Deposit Agreement and Signature Card under FRE 803(6) and relevant caselaw. Ms. Perkins declaration demonstrates that she is a Vice President and the Manager at the Citibank Financial Center where plaintiff's deposit accounts are domiciled. (See 5/23 Perkins Decl. ¶¶ 3, 7-11). As in Purcell and Brecher, Ms. Perkins states that her declaration is based upon her "review of the Citibank business records relating to plaintiff's account and from my own personal knowledge of how the records are kept and maintained," and the documents attached to her declarations:

> are maintained by Citibank in the course of its regularly conducted business activities and are made at or near the time of the event, by or from information transmitted by a person with personal knowledge. It is Citibank's regular practice to keep such records in the ordinary course of regularly conducted business activity.

(5/23 Perkins Decl. ¶ 2; see also 1/23 Perkins Decl. ¶ 2). As the Manager of a Financial Center, Ms. Perkins is intimately familiar with the procedures that Financial Center employees follow to open a new account. (See id. ¶ 3). Specifically, Ms. Perkins states that, to complete an account opening, a customer is required to sign a signature card. (See 5/23 Perkins Decl. ¶ 4). Ms. Perkins states that Citibank maintains signature cards for its customers in the ordinary course of its business. (See id. ¶ 5). Ms. Perkins also states that it is Citibank's custom and practice to

provide the customer with a copy of the Deposit Agreement, along with other documents, when they open a new account. (See 1/23 Perkins Decl. ¶ 6; 5/23 Perkins Decl. ¶ 6).

Critically, plaintiff's own declaration corroborates this. The "Customer Care Checklist" plaintiff attaches as Exhibit A states that a copy of the Deposit Agreement was "explained and given to Client." See Customer Care Checklist (Plaintiff's Decl., Exhibit A at 3). For these additional reasons, plaintiff's unfounded challenge to Citibank's evidence should fail. Moreover, Ms. Perkins' personal knowledge is acknowledged by plaintiff, who concedes in her complaint and her opposition brief that Ms. Perkins was one of the Citibank employees that plaintiff interacted with. See Comp. ¶¶ 38, 43 (noting plaintiff spoke with Manager Perkins about the transactions at issue when she went to the Citibank Financial Center on November 12, 2021 and February 22, 2022) [Docket No. 1]. Thus, plaintiff's challenge to Citibank's evidence fails.

Finally, plaintiff misrepresents that Ms. Perkins alleged that the 2020 Deposit Agreement was provided to plaintiff in 2016 or 2019. (See, e.g., Opp. Br. at 16). Rather, Ms. Perkin's declaration states that plaintiff agreed to be bound by the Deposit Agreement when she opened her deposit accounts with Citibank. (See 1/23 Perkins Decl. ¶ 4). In a separate sentence, Ms. Perkins states that her declaration attaches the arbitration agreement from the 2020 Deposit Agreement – the agreement that governed plaintiff's deposit agreements on November 10, 2021 when the transactions at issue occurred. (id. ¶ 5).

For each of these reasons, Citibank's motion to compel arbitration is supported by admissible evidence and should be granted.

## C. Plaintiff Is Equitably Estopped from Contesting Her Agreement to Arbitrate

Finally, plaintiff contends that plaintiff's "use of her Citibank accounts, and any benefit she may have received from her accounts, does not constitute her assent to Citibank's arbitration provisions." (See Opp. Br. at 23). Here too, plaintiff's argument fails.

A party "knowingly exploiting [an] agreement [with an arbitration clause can be] estopped from avoiding arbitration despite having never signed the agreement." MAG Portfolio Consult, GmbH v. Merlin Biomed Group, LLC, 268 F.3d 58, 61 (2nd Cir. 2001). Specifically, a party is equitably estopped from disavowing her agreement to arbitrate where they received a direct benefit that flowed from the agreement which contained the arbitration clause. Id.

Here, plaintiff should be equitably estopped from contesting her agreement to arbitrate. As set forth above, plaintiff maintained accounts with Citibank for nearly seven years. (See Plaintiff Decl. ¶ 4). See During that time, plaintiff has derived benefits from maintaining these accounts, including interest paid to plaintiff and various other services associated with her account. These benefits flow directly from the Deposit Agreement that governs plaintiff's deposit agreement. See, e.g., 2015 Deposit Agreement at 16-17, 20, 24, 36, 39-41; 2019 Deposit Agreement at 17-18, 21, 26-27, 34, 42, 44-45; 2020 Deposit Agreement at 17-18, 27, 34, 42, 44-45 (5/23 Perkins Decl., Exs. D, E, F). Moreover, as set forth above, plaintiff was on actual and inquiry notice of the Deposit Agreement and its terms. As a result, plaintiff's attempt to disavow the Deposit Agreement's terms should fail.

Plaintiff's reliance upon Schnabel v. Trilegiant Corp., 697 F.3d 110 (2d Cir. 2012) is unavailing because there the Second Circuit actually adopts Citibank's position. In Schnabel, the Second Circuit held that plaintiff received an email which included the terms of the

parties' agreement, the result of which was that plaintiff was on inquiry notice of and bound by the agreement and its terms, including the arbitration clause. See Schnabel, 697 F.3d at 126. Here, plaintiff was given both a copy of the Deposit Agreement on several occasions and instructions to download the Deposit Agreement.

Also unavailing, is Plaintiff's reliance on Hirsch v. Citibank, N.A., 2014 U.S. Dist. LEXIS 83534 (S.D.N.Y. June 10, 2014). In Hirsch, the Court held that Citibank waived its equitable estoppel argument and thus did not consider it. See Hirsch, 2014 U.S. Dist. LEXIS 83534, at* 57. Here, the estoppel argument was not waived.

For each of these reasons, plaintiff is equitably estopped from contesting enforcement of the Deposit Agreement's arbitration clause.

## CONCLUSION

For all the foregoing reasons and those in its main brief, Citibank respectfully requests entry of an order granting its motion in its entirety: (i) compelling arbitration of all disputes between plaintiff and Citibank and staying this action pending completion of the arbitration; and (ii) granting such other and further relief as the Court deems just and proper.

Dated: New York, New York
May 19, 2023

ZEICHNER ELLMAN & KRAUSE LLP

By: /s/ *Bryan D. Leinbach*
Bryan D. Leinbach
1211 Avenue of the Americas
New York, New York 10036
(212) 223-0400
bleinbach@zeklaw.com

*Attorneys for Citibank, N.A.*

15